Case No. 18-5007. Leandra English, Deputy Director and Acting Director, Consumer Financial Protection Bureau, Appellate v. Donald J. Trump, and his official capacity as President of the United States of America and John Michael Mulvaney, and his capacity as the person claiming to be Acting Director of the Consumer Financial Protection Bureau. Mr. Gupta for the Appellate, Mr. Rupan for the Appellees. Good morning. Good morning. May it please the Court. Deepak Gupta for the Plaintiff, Leandra English. Congress took pains to ensure that the CFPB would be independent, headed by a single… Before we get there, how does Ms. English have standing here? Well, the government hasn't questioned Ms. English's Article III standing. I am. I am. And the reason she has standing is that she is seeking to assert her entitlement to a position that she believes she lawfully holds. That is the legal question here. And address the redressability if she prevails. Does she get the relief she wants? If she prevails in the Court… How? How? And there is a preliminary injunction. The preliminary injunction seeks to… And who does the preliminary injunction run against? It runs against Mr. Mulvaney. We've also sued Mr. Trump, although there's a separate question whether that would be necessary. Yeah. Well, let's talk about Mr. Mulvaney. If you prevail, what's the injunction saying? So the injunction would prevent Mr. Mulvaney from holding himself out as the Director of the CFPB, from occupying that position. And it would restore Ms. English to what she believes is the status quo ante, which is… Would it? If you can't enjoin the President, what keeps him from naming someone else? Well, the President has the power to name someone and send a name to the Senate for confirmation. There's no question about that. You have to show that if she prevails, that she's likely to get the relief, right? And if you can't enjoin the President, and that's an open question, but not very open, right? If you can't enjoin the President here, what would prevent the President from simply naming other people? And it's not likely that Ms. English would get the relief she claims, even if her theory is correct. First of all, it is not a rule that the President can never be enjoined. Give me the examples where he has been. Sure. I mean, I'd be happy to – this question hasn't come up in the briefing. I'd be happy to give supplemental briefing on this question. It was briefed a bit in the district court. There are examples in this court, the NTU case from this circuit. Enjoining the President to fulfill his destiny? What this Court has said is that usually it's not necessary to enjoin the President because you can… Right. That's why you always name other defendants. Exactly, and you can do so with declaratory relief. There is this ministerial exception, but it's… Right. There are very few cases involving this sort of scenario where there's a contested appointment like this. We cited the Berry case from the district court, the Mackey case from the district court here in D.C., both of which granted injunctive relief against the President because there was no other person against whom to grant injunctive relief. Here, relief could be granted against Mr. Mulvaney. But all the relief against Mr. Mulvaney does is tell him he can't show up at work. It doesn't do anything. Unless you can enjoin the President here, I don't see how she gets her relief. Well, she gets the relief she wants because she will have an order that says that she is the acting director of the CFPB and Mr. Mulvaney is not, and that can be accomplished without an order against the President. Now, you only get to any of this if you conclude that we're likely to succeed on the merits. And so if I may, I'd like to start there. Didn't we deal with this problem in Swann v. Clinton and say that you'll enjoin an appointment context and join a lower-level person and assume that the President will adhere to follow the court's order? Yes, and Swann v. Clinton also found that the plaintiff in that case had Article III standing. So I should have started there. That's right. So to go to the merits now, it's now been five months since the vacancy and the President has yet to nominate a new CFPB director for Senate confirmation. Both sides agree that if President Trump had not invoked the Vacancies Reform Act, Leandra English would have become the rightful acting director by operation of the Dodd-Frank Act. And so the question here is whether the general and permissive language of the Vacancies Reform Act displaces the later enacted, more specific, and otherwise mandatory language of the Dodd-Frank Act. This case involves an apparent- So let me ask you, as you say in your reply brief, the question in part is, how do you say, how clear does Congress have to be to displace the FVRA? So the argument is the FVRA refers to vacancy, resignation, et cetera, whereas Dodd-Frank does not. Right. The government makes much of this ambiguity that the statute, the Dodd-Frank Act, uses the term unavailability. But it's common ground between the parties that unavailability covers a vacancy. The Office of Legal Counsel has concluded as such and has done so in previous opinions as well. And so the ambiguity on that question, whether the statute applies to a vacancy, I think, should not be imported to other questions, which is, what is the meaning of the word shall and how clear was Congress that this was a mandatory command? Once we get past the question whether the statute applies to a vacancy, it either does or it doesn't, and both parties agree that it does, the question then is whether this is a mandatory command. And we think – Can I back up and ask something? Yes. Because it seemed – Go ahead. – that essential to your position is that she, it's not only that we read the Dodd-Frank Act the way you want us to, but that we also say that she has, she assumes the for-cause removal, for-cause protection from removal that the director would. Is that correct? I think that's right. Is that essential to your position? If she does not have, even if everything else you say is right on statutory construction, just assume that for a second, if she doesn't get for-cause removal, you lose, don't you, because the appointment of Mulvaney is a constructive discharge? Yeah. I mean, I think you could write an opinion that rules in our favor, that doesn't find for us on that ground, but I think – How? Well – How would the appointment of Mr. Mulvaney not be a constructive discharge from that position? Yeah. I mean, I think that's the more natural view, and so let me try to defend – The unnatural view? The more natural view is what you said, which is that our position depends on this. So I think this is a question of statutory construction, and the question is did Congress give any indication that the acting director wouldn't enjoy the for-cause protection that is critical to this agency's design, and that is, as this Court explained in PHH, central to the goal that Congress had for this agency, which is independence. And it is not anomalous that an acting director or someone in this kind of position would have for-cause protection. The Social Security Administration is one of the few examples of independent – But they say it specifically there, though, that they would – It does. All right, so not saying it here. I mean, the difficulty for you is that the removal for-cause provision only says the director, and in the very next sentence, Section D, they talk about director or deputy director. So it wasn't lost on Congress that a deputy director is different from the director. And if – and so, one, just as a matter of a straightforward reading of the statute, they left deputy director out of the for-cause protection and put deputy director in the next sentence about restrictions on service. So that seems a tough statutory construction row to hoe. And if there's any – let me just – I'm sorry, compound question. If there's any ambiguity at all, don't we have to construe a statute not to constrain the president's ordinary at-will removal power? Okay, so as to the first question, this is just a question of statutory construction, I think first you're trying to figure out what does the term acting director mean. And I think what that means is that the acting director steps into the shoes of the director. The powers, privileges of the director, which are referred to throughout the statute, apply to the acting director. And there isn't any textual indication, and I'll get to the textual indication you've suggested, that Congress intended this for-cause protection that is really about the structural design of the agency not to apply to the deputy director. Now, you mentioned this next sentence after the removal for cause of service restrictions, but notice that the service restriction provision has some independent meaning when it applies to the deputy director because what that's saying is in the ordinary course where the deputy director is not the acting director, the deputy director also can't hold these positions in a bank. So I don't think that one should draw an inference from that provision to say that we should have some kind of atextual limitation that withdraws the for-cause protection that applies to this agency from the acting director, particularly when we know that there are other examples like the Social Security Administration where I think for-cause removal and independence were less central to the design. But Congress said it there and didn't say it here. That is the case. That's true. There are not very many single director agencies with for-cause protection. The only other one besides the two we've mentioned that I think is relevant is the Federal Housing Finance Agency. And actually this question about whether for-cause removal protection applies to that director, an acting director, there is being litigated right now in the Fifth Circuit in a case called Collins v. Mnookin. And I think the way to approach this in the first instance is as a question of statutory construction. There isn't any textual indication. Part of your statutory construction also seems to assume that at all times this agency must be headed by someone with for-cause removal protection. And that's just not true in the statute itself because if, for example, Mr. Cordray had stayed to the end of his term and then just continued until a replacement was made, at the end of that term he would be subject to at-will removal. That was in our PHH decision. It was conceded by parties all around. So Congress actually seemed to have envisioned that there would be these sort of interregnum situations where at-will removal would operate with this agency. So how can this be any different here? The statutory construction or the statutory purpose for independence is not protected by the statute itself, even as to the director, let alone an acting director. Well, I think, you know, we're still in the period right now where the acting director is, as it were, serving out the term for which the director was set or confirmed. So do you agree that in July 12th or whatever it is when Mr. Cordray's term would have expired had he stayed, that after that she would lose the for-cause removal? I think that's a much closer question because of this Court's decision in Swan v. Clinton. I get it's a closer question. So what is Ms. English's position?  We do think that it continues after because there's no textual indication that it's withdrawn. But I acknowledge that in Swan v. Clinton – Does it ever end for her? Sorry? Does it ever end for her? It does. I mean, I think – When? Well, certainly in the case of Swan v. Clinton, President Clinton tried to name a replacement to the NCUA board with a recess appointment, and the Court said certainly there's no for-cause protection there. And that was a statute where there was no statutory for-cause protection at all, which is true of many financial regulators. So I think it's certainly possible to say under Swan v. Clinton that at that point, once the term expires, that the for-cause protection ends with it. But here we're in a situation in which we're still within that original term. The President hasn't even named a successor or sent that name to the Senate.  Without the statute, we're ambiguous. Not explicit. It's not explicit. Without it, we're ambiguous. You have your statutory construction tools, and others will have their own. Doesn't constitutional avoidance break any ambiguity tie here? I think constitutional avoidance certainly has a role to play. But first of all, we're not in a situation in which the President has named a successor or we're past the term where those kinds of constitutional concerns would start to increase. And this Court has always, the Supreme Court has said, that for-cause removal protection is attached to a limited duration. Here, I think Congress intended that the acting director position would be a position of limited duration. And there's no reason to think it won't be here. The President has the ability to name a successor and have that person confirmed. And I should just point out that the constitutional avoidance considerations point in both directions. I mean, it is possible on the defendant's view that an acting director could name a deputy and that person could remain for an indefinite period of time, although acknowledged they would stay without the for-cause protection. How is that a constitutional problem if they don't have for-cause protection? Well, it shows that the parade of horribles about a person who is remaining in the position and the Senate does not confirm anyone and conspires to deprive a Senate-confirmed director, that that can obtain even in their scenario. But I think if you conclude that there's ambiguity about this question, about whether for-cause removal protection applies, I think the right way to analyze that question is, first of all, I think there's no textual indication that it was not intended to apply, and I don't think the service restriction provision gets you there. And then I think the overall purpose of this statute is very clear from this Court's PHH decision. The Court recognized that this statute was designed to preserve independence from presidential will above all. And it would be quite strange for Congress, in designing this agency, to have created the first independent financial regulator where, during this transitional period, the president can take over the agency, as it were. I mean, if you look at the multi-member commissions, what typically happens is before the president can name a successor, the president has to send a name to the Senate and get Senate confirmation. And so this would be a situation in which the very agency that Congress intended to be sort of more independent, super independent, so much so that it raised these concerns in PHH, would be an agency where the president could take over immediately in the event of a vacancy, and all of these attributes of independence would then actually all be in service of the opposite of what Congress intended, which would be to maximize presidential control of the agency. You know, but before we get to purpose, we have to deal with text, right? That's right. And in both the Vacancies Act and Dodd-Frank, we have some express statement rules, right? We put them together, and it's as if it reads, the Vacancy Act procedures are displaced only if done so expressly. That's mashing them two together. What is there in Dodd-Frank that expressly displaces the president's authority under the Vacancy Act? I think it's- Because that's the way it has to expressly do so, right? We can't do this by implication. Right, and Congress did so expressly by using a mandatory command. The conventional way- But in Brewer, there's got to be something on the face of it that shows us that they had in mind displacing the president's authority. Right. And I think you tried- you don't have the Ninth Circuit dealt with this argument. You're just creating two alternative means. Right, and we think the Ninth Circuit's decision in Hooks is correctly decided. The two statutes, the FVRA and another statute, can exist side by side. The statute there, of course, uses the word may, and it was a pre-FVRA statute. So the question here is, what did Congress mean when it used the word shall? I think the legislative history is helpful here. Congress, in the House version of the Dodd-Frank Act, had an explicit reference to the FVRA, and the succession would have followed the FVRA. It eliminated that reference and instead inserted this mandatory command. Do you really want to go to legislative history? That's not a terrain I'm often comfortable arguing, but the legislative history here shows that the express statement rule was the last thing that came in in the Senate report. Right. You're talking about the Dodd-Frank legislative history? Yeah. Yeah, but that express statement rule, I mean, I think the most reasonable explanation of that is that the House provision was dropped out, but the gist of it was preserved in the Senate conference report. If you want to go legislative history. Right. You're talking about the might be better sticking with shall. Shall is mandatory, right? Right. Shall is mandatory. That's the conventional understanding of the word shall, and nothing about the way Congress used the word here indicated an intent to do anything other than Although, isn't the history, I mean, once again, from the legislative history, doesn't the conference report point out that there are, what, 15 other statutes involving acting directors that use the word shall and never been thought that they displaced the president's authority under the Well, pre-FVRA, it's our view that those shall statutes were indisputably mandatory. The question is, what happened when the FVRA was passed in 1998? Right. And it's true. The government relies on the Senate report for the conclusion that I think the branches have now understood, that those statutes can exist side by side with the FVRA. But sequence, I think, is quite important here. The question here is, what intent did Congress have in 2010? When Congress was designing an agency that was designed, above all, to be independent of presidential will, were they But in Dodd-Frank itself, they incorporate all of the government personnel law. Right. Specifically, and that includes the Vacancies Act, right? Well, it includes all laws applying to personnel, budget, all sorts of things, and I think Right. And what that means is that absent some textual indication to the contrary, those statutes are going to apply. But there is a textual indication to the contrary. And it's shall. It's the word shall, right? Yes. Now, you do a lot of citing of Garner and Scalia on shall, and I like that. That's good. But they also point out that shall is a semantic mess, right? That shall doesn't always mean mandatory. That's right. And in terms of citing canons, you do the general specific canon. There's another canon that we're supposed to use before that, and that's the canon for harmonious reading of statutes. Putting all these statutes together, wouldn't it be better to read shall as will here and that it doesn't displace it? Aren't we supposed to read them so they try and work together? And can't they work together here if shall does not displace the president's authority? Yes, I think they do work together. That's the point I was trying to make. But not if they displace the president's authority. Well, they work together in the sense the general and specific canon understands that the more specific and later enactment becomes an exception to the general rule. And so it's not an implied repeal. It's just in this specific situation, Congress works. In your argument, it certainly works like an implied repeal here. You're displacing the president's authority under the Vacancies Act. Right. In this specific context where Congress used this mandatory command, which mirrors the mandatory command of the FVRA. The FVRA, and I just want to sit down, the FVRA says the first assistant shall become the acting, right? And then the two later clauses say notwithstanding that section, the president may. And what that structure understands is the conventional understanding of shall and may, that we needed those notwithstanding clauses because otherwise that shall language would be mandatory. In the Dodd-Frank Act, Congress has used that shall language to indicate a mandatory command, and there's no indication that notwithstanding that mandatory command, those permissive provisions of the FVRA would apply. Sorry, to the extent your argument hinges on shall, the backup you have to that is the independence purpose nature structure. Yes. To what extent is your argument based on the second part of your argument, that namely Mr. Mulvaney cannot be protected? As you know better than I, it's been suggested that it can be independence. His problem is the particular person who was appointed because of his position. Yes. Serving not only as the director of OMB but at will. Right. I think that the appointment of Mr. Mulvaney highlights the principal argument we're making, the problem with how it destroys the statutory design that Congress had for this agency. But it's particularly, I think, notable in this regard that Congress had provisions in the statute to insulate the Bureau from the director of the Office of Management and Budget. So there are provisions that say that the budgets and plans should not be construed to have to be approved by the director of Office of Management and Budget. So pressing forward on this point, the President, if we were to read the two statutes that's coexisting, the President could appoint someone else exercising one of the options he would have under the Agency Reform Act. Yes. If you disagree with us and you conclude that the FVRA applies and the President has that authority, he could appoint somebody else. But this is the narrowest way you could rule in our favor. Well, that's what I was getting at, really. Why is it necessary to adopt your position when independence as such is preservable in another way and the problem with the deputy serving maybe with for-cause protections serving indefinitely, even after the President were to send someone to the Senate and then there's a battle over the confirmation of that person? Right. So as Chief Justice Roberts says, if it's not necessary to decide, it's necessary not to decide. If you agree with this more narrow argument that Congress sought to insulate the OMB director from the CFPB, and so the one person that the President should not have named to this position was the OMB director, to have someone occupy those two offices that Congress sought to separate, that would be the narrowest way to rule in our favor. It would not implicate these broader questions about the FVRA. So were the President to move in that direction and appoint someone else, would you still be back with the same argument, namely that anyone who serves at the President's will is, what, an inappropriate nominee? I'm just trying to understand. It's not that the President exceeds his authority, but rather he's selected the wrong person. Right. The argument there would be, this is a slightly broader argument, would be that someone who serves at the pleasure of the President cannot be in this role of heading this independent agency because it contravenes the whole theory of Humphrey's executor that independence entails. To have that attitude of independence, you can't be serving at the pleasure of the person you're supposed to be independent from. Don't go yet. Don't go yet. So as to this last argument on just that it can't be the OMB director, how does Ms. English have standing? Because that doesn't say that it's her rather than someone else. That bypasses that argument and would just say anybody in the world except Mr. Mulvaney. Oh, no, Ms. English, she certainly has standing for the same reasons that she has standing, right, to bring the broader arguments because someone who transgresses that more narrow understanding of independence has been named and displaced her. Now, that isn't to say that the President couldn't solve the problem by naming someone who would be an appropriate nominee. But the redress that you want isn't just some sort of table-thumping, you shouldn't have done that. Her redress would have to be that and she gets her job back. And in your just not Mr. Mulvaney argument, that's not the end result of a court order in the way it would be under your Federal Vacancies Reform Act, Dodd-Frank Act argument. It would be, Your Honor, but then it would be up to the President to decide how he wants to respond. And he has, of course, he still has the ability to name a Senate confirmed director. He would have the option to name someone who would be appropriate and wouldn't transgress these principles of independence. But Ms. English would receive, she'd have standing, and her injury would be redressable because you would be issuing an order that would restore what we think is the status quo ante, put her back in that position, and then the President would have the option to decide what to do next. So it would not be a pyrrhic victory, and I think it would be important. Half a day or so she might get the job back. Sorry? She would get the job back for half a day or an hour or so until the President names somebody else. Well, I can't predict what this President will do. But your theory is that there's going to be some period of time, just as a matter of the way things work, it takes time for news to travel, that she would then be acting director? She would be acting director, and the Court would also be saying that she should have been the acting director, and that this design of agency independence means something, and that the President can't No, we wouldn't be saying all that in the just not Mr. Mulvaney, because we would be saying other people who are subject to at-will removal could be put in there. It's just not, as I understood your argument, it's just a statutory walling up of the OECD. Well, I want to be clear. There are sort of two versions of the argument. The narrowest, narrowest version, right, is that it cannot be the OMB director. The broader version of that argument is that it cannot be somebody who serves the President at his pleasure to run this independent agency. And, you know, that's never been the case in independent financial regulators. They've always been named. They've always been headed by people who are independent of the President, and Congress took special chance here. Well, under this statute, right, if Mr. Cordray had continued, he would be at-will. So it's just not true. Well, I don't agree. I mean, I don't agree. Yeah, I mean, right. For the reasons we've discussed, you know, I don't I'm just saying if Mr. Cordray had stayed. Yes. Not what would happen to an acting director, but if Mr. Cordray had stayed, there's no question. And our on-bank court noted this, that after July 12th or whatever the date is, he would serve at-will until a replacement came in. After the expiration of the term, he could be replaced by the President, right? At-will. The other question, I just had one more. I'm sorry to delay you, but as long as you're talking about statutory construction on the your Dodd-Frank trumps the Federal Vacancies Reform Act argument, you focus on the word shell, but what caught my attention is the phrase absence or unavailability. And I could not find any statute that was deemed to be a successor provision that did not have either the word vacancy or verbs that indicate permanent termination of the individual, the prior person who held the job. So they all say either vacancy or a phrase like dies, resigns, terminated. And when someone dies, resigns, terminated, they're not coming back. Without the word vacancy or anything that suggests any non-foreseeable, that return is non-foreseeable, why is this even naturally read as a successorship provision? I just couldn't find any other statute. Right. Well, I mean, to go back to our discussion of this earlier, this is something that's common ground between the parties. The Office of Legal Counsel has interpreted the word. It's not the word absence. It's the word unavailability. And, you know, there are references in previous. I guess, you know, with all due respect to OLC, I have to read statutes myself and do my own statutory construction. And even they admitted that, well, it's a bit dubious. It's not at all clear. They're not warmly embracing it. And, quite frankly, in their briefing, they embrace it on one page and reject it on another, as you noted in your reply brief. So they're not – I don't think they're that dependent on this interpretation. Well, they want to have their cake and eat it, too. They want to be able to get some – Okay. And I don't. I don't. So I just want to construe this statute. Right. I've got no skin in this game other than to try to get this statute right. Right. So if we're trying to decide whether this is a – this is a displacement of the Federal Vacancies Reform Act. Right. That general thing out there. And Congress meant for this to govern vacancies. Can we do that when the word vacancy is not here, nor the equivalent terms of dies, resigns, terminated, permanent, non-return? Right. Well, I mean, I agree with the government that the word unavailable is best read as a catch-all. And, you know, you have these references in the OLS opinions to the phrases like dies, resigns, or is otherwise unavailable. Right. Or what the FVRA says, dies, resigns, or is otherwise unable to serve. Right. And so I think that is the best and most natural reading of that word. I honestly don't know why Congress chose that word as opposed to the more traditional formulations. But the legislative history does show us – But words are known by the company they keep. And I get that if you say dies, resigns, terminated, or otherwise unavailable, you're just trying to cover the basis for in whatever capacity this person is not coming back. Right. But here, when the only accompanying word, the only company the word unavailable has is the word absent, which everyone says that doesn't mean a vacancy. Right. And it seems to me, again, to the extent we're trying to decide what Congress intended with respect to the Federal Vacancies Reform Act, you've got another textual speed bump. Well, absent – you know, unavailable has got to mean something other than absent. Right. And so what independent work is that word doing unless it means what I'm saying it means? Because in any situation where someone has not, you know, died or resigned, they're going to be absent, I think. I mean, those are the only two situations in which you would have someone acting come in. Right. Unavailable would cover – But Congress felt like they had used the word vacancy in just about every other statute. Well, and I think it's also – I don't want to belabor this, but I think the legislative history is helpful in that, you know, Congress knew it was talking about vacancies, and it had this very specific reference to the Vacancies Reform Act. It removed that reference and then put in this language. And so I think in light of that history, it's best understood as a vacancy provision. Thank you. Thank you. Counsel Farratt, please. May it please the Court, Congress would not have intended to displace the FVRA using the precise language it specified coexists with the FVRA. As Counsel conceded again this morning, the FVRA coexists with the dozen or so agency-specific vacancy statutes using mandatory words like shall that were enacted pre-FVRA. Before we get to that, I was caught by something on page 47 in your brief, and you say, even assuming that separation of powers concerns do not categorically bar jurisdiction over claims like English's. And then you go on. Are you making a jurisdictional argument? I think that was about the scope of relief, if I recall correctly. Your phrase is, even assuming the separation of powers concerns do not categorically bar jurisdiction over claims, not relief. We're not making a jurisdictional objection beyond a concern about injunctions running against the President, Your Honor. Okay. Sorry to interrupt, but I had to make sure we didn't have a jurisdictional issue. So as Counsel conceded this morning, the dozen or so statutes that use mandatory language that predate the FVRA coexist with the FVRA. So their entire argument turns on a question of timing, that when Dodd-Frank used the precise same language, it somehow displaced the FVRA simply because it postdates the FVRA. And that's contrary to both the text of the FVRA, the text of the Dodd-Frank Act, and established canons of construction. So first, starting with the text of the FVRA, the reason the FVRA coexists with the preexisting statutes is because of the exclusivity provision and its exception, where it specifically says that the FVRA is exclusive unless there are other agency-specific statutes that directly designate an officer to serve. That language is temporarily unqualified. It doesn't turn on when the other statute was passed, whether it was pre or post. So just on the face of the FVRA, Congress has already told us that if there's an agency-specific statute, even one that uses the word shall, even one that's mandatory, it coexists with the FVRA. And that language, by the way, the fact that it's temporarily unqualified is no accident. An earlier version of the draft bill actually did have a temporal limitation in it, and it was removed before Congress enacted the ultimate FVRA. Your Honor, I had a question. Yeah, I was just going to ask the same question I asked the other side, and that is do we need to get through any of this if we hold that Ms. English does not enjoy or cause removal protection, even assuming she is the acting director? Nope. We very much agree, Your Honor, that if you agree that she's removable at will as an acting, then you should treat the designation of Mr. Mulvaney as a constructive discharge, and we do think it is correct that she doesn't have at will removal. I guess I'll make a couple of points in addition to what was discussed earlier. First, of course, is there's the fact that the removal provision only specifies the director, not the acting director, but there's a pretty good textual indication that that is intentional. If you look at the holdover provision, the holdover provision references an individual serving as director, and the removal provision doesn't use that language. It doesn't use the language of an individual serving as director. If you contrast that to the language in the Social Security Act, the removal restriction in the Social Security Act covers an individual serving as the Social Security Commissioner. That, too, is an independent, single-headed agency. So there we have a very good textual contrast that when Congress wants to give removal restrictions for an acting independent agency, they can do so, but they haven't done so here. Lots of other places in the statute when it talks about what the director will do, and there's no question that the acting director can do the things that the director will do, they don't use the phrase the director or someone serving as the director. So in all those cases, the director. All the other statutory provisions, the director is, I would assume, naturally construed to wrap in the acting director. Sure, because those are the powers and duties of the director, and the whole point of the acting director is it says that the acting director can serve as the director  This is a protection of the director, and so the language of the deputy director provision doesn't pick up the removal restriction, and we know that Congress, when it wants to pick up a removal restriction for an acting director, it says so expressly. And then over and above that, there's the fact that in Swan v. Clinton, this court held that removal restrictions shouldn't be extended to holdovers. I think all the rationales that the court gave for that equally apply to acting directors, including the constitutional concerns. So I do think that would be a complete answer to this case, Your Honor. But going back to the actual question that's been briefed, over and above the actual text of the FERA, we then turn to the text of the Dodd-Frank Act, and the Dodd-Frank Act says all federal laws dealing with officers apply unless expressly provided otherwise. And certainly nothing in the Dodd-Frank Act expressly provides otherwise, because the only language that they've pointed to in the Dodd-Frank Act is the mere word shall, and we know that shall by itself isn't enough to displace the FERA, because the FERA says that, and all the statutes that predate the FERA they concede don't displace the FERA. I was curious as to how forcefully you defend the view that absence or unavailability, in particular unavailability, is in fact meant to cover vacancies like this, successorship situations, as opposed to this is how we just keep it running when the director isn't around or isn't able for whatever reason temporarily to act. Well, Your Honor, the question really isn't presented here. The issue isn't whether she is the deputy director. The question is whether as deputy director that displaces the FERA. And for that purpose, the question that's actually presented here, I think the key is the point that Your Honor pointed out earlier, which is that at a minimum it's not clear. And I think counsel himself even referred to it as ambiguous. And if it's ambiguous as to whether she's even the deputy director at all, then certainly it doesn't have the clarity necessary to displace the FERA, particularly given the express statement requirement in the FERA. So I don't think this Court really needs to answer the question of whether, had there been no designation by the President, she could even serve as deputy director. No, I'm not asking that. I'm saying why is absence or unavailable focusing on the word unavailable? Why is that even construed to cover permanent vacancies by the director as opposed to temporary ones? I guess I'm missing that point. As a center of statute of construction, I could find no statute where Congress used just that formulation to talk about a successorship provision that was meant to, when the person in the director role or the head role is not coming back. No, Your Honor, it's a reasonable point. And in a case where the question was whether she was the deputy director and where we had actually fully briefed it, that would be the right case to address that. It just simply isn't presented here because we're not disputing for present purposes that she is the deputy director. And all we're saying is that that's not enough to displace the FERA. So I think that the questions about whether she is the deputy director are best addressed in a case where it's squarely presented and where it's been squarely briefed. The Homeland Security Act, doesn't that talk about unavailability and vacancy? Are you aware of that? 6 U.S. Code 113-G1, the undersecretary for management shall serve as the acting secretary if by reason of absence, disability, or vacancy in office, neither the secretary or deputy secretary is available to exercise the duties of the office of the secretary. So I think that language is absent. It says vacancy in there. So I'm not sure that's really responsive to the question Judge Millett was asking. So as I said, the FERA language doesn't displace. The Dodd-Frank Act language doesn't displace. The last point on statutory interpretation. I'm sorry, just to back up on one thing. If the President had not named anyone, Mr. Mulvaney or anyone else, then you do not dispute that she would not only be deputy director, but upon Mr. Cordray's resignation and until either a Senate-confirmed person comes through or we're back in this dispute, she would be acting director under the phrase absence or unavailability. Yeah, we're not disputing that in this case. I think the textual points we made about both the FERA and the Dodd-Frank Act are bolstered by established standards of interpretation. I just ask so I'm clear, when you say you're not disputing that, are you also not disputing that she would have full cause protection? Oh, we are disputing that. We are not disputing that, in this case, that she is the deputy director, but for an FERA designation she would be the acting director, but we do disagree that acting directors have any sort of— Even within the same term. Even within the same term. We think both the textual indications and the constitutional concerns that Swan discussed apply equally for holdovers and acting. If I turn to the canons of interpretation, which I think bolster our textual argument, there are two canons of interpretation that I think are quite relevant. One is that Congress legislates under the backdrop of existing law, and two is that the statute should be harmonized. In this case, as I said, the FBRA makes clear that agency-specific vacancy statutes, even when they use mandatory words like shall, coexist with the FBRA, and so there's simply no reason to read shall as displacing all that. You need to have greater language. They emphasize heavily the specific controls of the general, but as the Court has made clear, both the Supreme Court and this Court, that canon applies when the specific and the general are inconsistent, and you need to basically create an exception so that they can be harmonized. That's not necessary here. You don't say that the specific trumps the general when the general already says that it coexists with the specific. It just doesn't make sense, and they're creating a conflict in the statute when the statute on their own terms can be harmonized. I turn to some of their points about independence. As Your Honor pointed out, I think the holdover provision of the CFPB and the fact that there's no removal restriction, that by itself explodes their argument that Congress was trying to make the CFPB deputy director maximally independent, but I think there's an even greater concession that shows that. They've conceded in their brief that if there was no deputy director, then in that circumstance the FVRA applies. So we know then that the president could pick someone, and the president could pick someone who was within his control and who acted in his pleasure, and that would be perfectly permissible under the Dodd-Frank, even under their own interpretation. A couple other points about independence. The FVRA does say that it doesn't apply to certain independent agencies, multi-member ones. If Congress had wanted to make sure that the Dodd-Frank Act wasn't subject to the FVRA because they wanted to keep it independent, they could have included the CFPB within 3349C. They did not. And it's not like single-handed independent agencies were news to the Congress in 1998 when they passed the FVRA. Just in 1994 they had made the Social Security Administration an independent single-handed agency. The Office of Special Counsel had been an independent single-handed agency since 1978. Both of those agencies are subject to the FVRA, which I think further demonstrates that their concerns about independence are misguided, as is the FHFA. Even the FHFA, it's true that the president has to pick within the three deputy directors, but it's still the case that he gets to pick who's one of the three deputy directors, and then whoever he picks serves at his pleasure as acting director. And so all the pressures and desires to comply with his wishes, if they want to stay being that. Why don't we have more examples of Congress displacing the president's authority over the vacancy act? You just cited one, the FHFA. Are there others? Just to be clear, I wasn't saying that the FHFA displaces. I was just saying that even on the plain terms of the FHFA, even on their view of the statute, the president gets to pick among the three deputy directors. Well, if your argument is that Dodd-Frank isn't express enough to displace, you agree that Congress could displace the president's authority. Of course, and there are lots of ways that Congress could have done that. But they haven't, right? Not to my knowledge have they just categorically said, other than the agencies that are listed in the express exception to the FVRA in 3349C, the multi-member independent agencies and FERC and the Service Transportation Board and Article I judges. All of those are expressly exempted. But setting aside those, I'm not aware of a situation where Congress has wholly displaced the FVRA. As to why, I suppose it's because they think the FVRA is a good statute. I'm just getting at, you know, people always make the argument Congress had the ability, they knew how to do this expressly, that the fact that they didn't is significant here. But doesn't that suggest that maybe the way that they did it was through the use of the word shall here? Well, I don't think so, Your Honor. What they were signaling here is that this agency is a different sort of agency. We want to preserve independence here, and so the way that we're going to do it is we're going to, the deputy director is going to become the acting director and the president is cut out of the picture. Well, so that would be a passing strange way to do it because the FVRA itself says that such statutes coexist with the FVRA. They don't displace it. If they actually wanted to displace the FVRA, there are multiple ways they could have done it. We're not urging a magic words test like they suggest. As I said, they could have put the CFPB in the exceptions to the FVRA in 3349C. They could have said that the acting director shall be the exclusive, the deputy director shall be the exclusive acting director, parallel in 3347C. Congress doesn't speak like that. When has Congress ever said she'll be the exclusive successor? Do you have any statute that's ever used the phrase the exclusive successor? FVRA section 3347 itself says that the FVRA is the exclusive method. No, no, no. You just said you wanted a statute to say so and so shall be the exclusive successor, the exclusive acting director. I've never seen anything like that. It's true that I'm not sure that there is a statute that says something like that. Maybe the way you would say it is this person shall be it. If they had said only or if they had said exclusively or if they had said something like that, sure. This person shall be it? Why isn't that enough? Because the FVRA itself says that saying shall isn't enough. If you focus on 3347A1B, I believe, is the language in the exclusivity provision that says if there's an agency-specific statute that directly designates an individual to act, that renders the FVRA not inapplicable. It renders it nonexclusive. And they concede that there's more than a dozen statutes. Well, there might be a statute that says so and so will. No, there are statutes that say shall. We've cited them in our brief. Well, the past ones, right? Huh? You're talking about past ones. Past ones plus two subsequent ones. Both the statutes that govern the Office of the Director of National Intelligence and the Central Intelligence Agency are both post-FVRA statutes that use the word shall. And at least for the ODNI, it has not been treated as exclusive. At the start of this administration, when there was neither a director nor a principal deputy, another deputy director served for three months as the acting director. On their view, that should be illegal. Except in their reply brief, they tried to say to us, oh, no, shall means shall unless there is no deputy director. But that, I think, just further underscores why their entire interpretation is atextual. If shall means shall, it means shall. It means that if there is no deputy director, there should be no one serving. They just want to create an exception that says shall means shall unless. Well, if shall can mean shall unless there's no deputy director, it can also mean shall shall mean shall unless the president invokes the FVRA. That actually makes much more sense because, again, the FVRA says it. The FVRA says that agency-specific statutes shall coexist. And because the Dodd-Frank Act says all federal laws dealing with officers shall apply unless expressly provided on the law. So on your coexistence argument, is there any limitation then on who the president may appoint, given that you have acknowledged the Dodd-Frank setting up an independent director? So a couple things, Your Honor. The first is I think there's at least a possibility that he couldn't appoint someone who could not serve as the director themselves. So the Dodd-Frank Act specifically specifies certain people and certain job relationships that exclude you from being the director. To be sure, that language doesn't specify whether it extends to the acting director, and so I think that would be a question. Well, it does say deputy director, so I don't see how you could possibly read that. Right, but I think Judge Rogers' question is if it was through the FVRA, so they wouldn't necessarily have to be the deputy director either if it was a presidential designation. But at least possibly that language would be. But, again, if I could just bracket, that language further shows why they're wrong. Because Congress specified, Congress thought about who shouldn't serve as the director, and Congress didn't say anyone who's serving an OMB. Congress didn't say anyone who's accountable to the president. Congress specified a couple of relationships. So, in your view, you are asking for magic words in that regard because the argument on the other side is Congress did say very expressly that the director was to serve and perform his duties or her duties independent of OMB. And I'm suggesting that means the director as well as the OMB. Well, so I don't think that's quite right, Your Honor, for a couple of reasons. The first is the Dodd-Frank Act doesn't say that theóit doesn't hermetically seal the CFPB from OMB. It doesn't say that there can't be consultation. All it says is the CFPB is required to provide financial reports to OMB. All I'm gettingóyes, go ahead. But that doesn't require the CFPB to consult or get the approval of OMB. It's perfectly permissible for the CFPB to do so. And, again, they concede that if there wereósorry, I'm sorry, you had a question. No, go ahead. Finish. The other point I just wanted to make about the OMB issue is if they're wrong about the threshold point that the FVRA applies, anyone who the president picks under the FVRA is going to be accountable to him because the president can always change the designation. Well, I understand that argument, but as you know, I mean, it's been suggested to us that there are a number of other people who the president could appoint. The question is if you read Dodd-Frank to say that the director is to have the power to function independently of whatever policies and preferences that OMB may have, then does it follow that necessarily if you're going to have the statutes to harmonize, the president cannot appoint the director of OMB? He may appoint various other officials who serve at his pleasure during this interim period but not the director of OMB. So I don't think so, Your Honor, because, again, the word independent isn't tied to that OMB provision. The word independent is at the front end saying that it's an independent establishment. So anyone who he picks, literally anyone under the FVRA is not going to be independent in that sense, and most of the people he could pick under the FVRA would be presidential PAS appointees who he could remove from their original position at will, just like the OMB director. No, I'm trying to get you to focus. I hear you. So on the OMB provision specifically, again, all I would just say on that is I think they're over-reading that provision drastically. It would be perfectly permissible for a Senate-confirmed CFPB director to run everything they do by the OMB director, to not make a single move unless the OMB director blesses it. All the statute says is that they're not required to do so, and they can't take that, that shall not be construed, and use that as somehow implicitly qualifying the president's designation powers under the FVRA. If shall isn't enough to expressly displace the FVRA, certainly that very string negative inference isn't enough to displace the FVRA. Except the end result of appointing Mr. Mulvaney is that everything the CFPB director decides is going to be approved by the OMB director or won't happen. He's wearing two hats at the same time. It seems to me much on straining things, it seems much to strain to suggest that Mr. Mulvaney would wake up and say, I wish to do this as CFPB director versus OMB director. I think that's a terrible, horrible thing to do, but I'm going to go ahead and do it, and then after lunch I'll go back over to the OMB. Look, I don't disagree with that, Your Honor, but again if the president I think you're giving too little weight to the fact that when it says you don't need the OMB's permission to do these things, it doesn't mean you couldn't get it if you want to, but I think you're giving too little weight to the notion that this appointment then turns that you don't need their permission to nothing's going to happen without that permission. We all know how this is going to work. We might all know that, Your Honor, but if the president picks someone other than the OMB director and said I want you to consult with the OMB, I think there's a pretty high likelihood they would do so. So I'm not sure that there's any difference between picking the OMB director and picking someone who No, if the president said I'm putting you in there and don't do anything that the OMB director wouldn't do if he were in your position, that would be contradicting the statute, correct? That would violate the plain text of the statute. I don't think so, Your Honor. The president is allowed to make his designations on the FVRA. And completely ignore other parts of the statute as well, such as saying if the president said, and don't do a budget unless the OMB approves. If the president said that to the new replacement, the temporary replacement person, you're saying that would be perfectly fine. With that provision in the statute governing a permanent director who has four clause removal, use the Holdover example, Your Honor, where everyone concedes they're removable as well. You said that, look, when it comes to the powers and duties of the director, then whoever is serving as acting director can do that. They may not get the protections of four clause removal, but when it comes to the jobs and duties, they are the same. And so an acting director has no more obligation to get OMB approval of a budget than the director would have. He doesn't have an obligation to, but the president can certainly remove him for doing it, as, again, they concede. If there was a holdover, or if there was no deputy director, and so there's concededly no four clause removal, the president can say, you have not exercised your powers in the way I wish you to, and you're being removed. That's not inconsistent with the language that the CFPB director can't be required to do that, because normally when the CFPB director is serving during their term, they have four clause removal. But once the four clause removal is gone, as Your Honor pointed out for holdovers, and is also the case for actings, then that just can't be the case. The president isn't somehow constrained in exercising his removal power in that circumstance. But none of this is sufficient to displace the FVRA, especially given the Dodd-Frank Act itself says that all federal laws dealing with officers apply unless expressly providing otherwise. No, it's just troubling to hear you saying that the president's at-will removal power for what Congress has said should be a Senate-confirmed position includes the power to tell the acting person to do nothing, or do all the things the statute says you should not do and cannot do or need not do. That seems to me a bit more than just saying I have at-will removal. Because the theory of it is yes, you have at-will removal, but if you're removing everybody every day because they're actually trying to do the job they've been appointed to, it's going to become non-functional. No one's going to take the appointment. It would be one thing if the statute prohibited the CFPB director from consulting with the OMB director,  but the statute doesn't say that you're prohibited. It just says you're not required to, and that makes perfect sense when you have for-clause removal. All right, so you would agree, then, that in appointing someone, the president shouldn't say you're appointed on the condition that you do something the statute forbids. That would probably not be a prudent exercise of the president's appointment authority. You wouldn't phrase it that way. You'd come around the other way. You're not concerned with the proposition that the agency basically couldn't function. Again, I think we are slightly over-emphasizing. The basic part of the OMB provision is a requirement on the CFPB. It's a requirement that they provide OMB with materials. The provision that they're hanging their hat on is a rule of construction that says that requirement to provide information shall not be construed to require approval. That cannot be enough to displace the FVRA. Given that shall doesn't mean it. I think Judge Rogers makes a narrower point, not just displacement of the FVRA wholesale, but simply that reading the statutes together, even under your approach, there at least seems to arise an argument, as they've presented, arises out of the Dodd-Frank Act, that your universe is narrower, is a tad narrower here in the FVRA. You can't do OMB director and you can't do a Federal Reserve Bank and the things that are listed in the service restrictions. I guess I'd still say the same thing, though. It's not clear enough to displace the FVRA in whole or in part. The Dodd-Frank Act expressly says that all federal law is dealing with officers, all federal laws, and that includes all applications of federal laws, unless expressly provided otherwise, and it simply doesn't expressly provide otherwise. If Congress had wanted to say that the OMB director cannot serve as the director or acting director of the agency, then they could have specified that. They could have added that. Right. What caused this was I was concerned about what I thought you were saying to Judge Rogers, and that is that the President could even appoint someone whom Congress has said may not serve, such as someone who's employed by the Federal Reserve Bank. I think that would be a tough question, Your Honor, and we haven't taken a position on it. But I guess one other point I can make about that. But you're not willing to concede that your view is it's an open question whether the FVRA takes over, displaces not just the deputy director position, but also limitations on who can serve as the head of this agency. Yeah, I think it's a tough question, and the reason we haven't taken a position on it is because the language does say director, not individual serving as director. Well, it doesn't sound like not a position. That sounds like you're considering it as not a point. Well, I just specified the argument on one side. The argument on the other side is, I think, the premise of your question. But if I could say one other thing about the OMB director, I think it's undisputed that the President could have nominated the OMB director and the Senate could have confirmed the OMB director, right? Sure, but then you wouldn't have the problem because he wouldn't be elected. Oh, there wouldn't. Oh, I'm sorry. Their argument, right, is that the statute forecloses this somehow. So under their theory, the President should not be able to even nominate Mick Mulvaney to serve as OMB director, even if the Senate confirms that. So even CFPB director while he's aware to have the position. Because there's no restriction on dual service, unlike other statutes that do restrict dual service. I think that's perhaps the best way of showing why they're reading too much into the OMB point. Anything further? No. Thank you, Your Honor. Thank you. Counsel for Appellant? Thank you. I'd like to start with the OMB issue that my colleague left off on. So it is true that the statute does not expressly say the OMB director may not be the director or the acting director in so many words. But Mr. Mulvaney, simply by being there, is necessarily violating these provisions with respect to the OMB director. His very presence does so. And I think my colleague didn't focus on the right language in this OMB provision, that that provision is 12 U.S.C. 5497A4E. The language at the end of that provision makes very clear. The director of OMB, the statute may not be construed to confer any jurisdiction or oversight over the affairs or operations of the Bureau. I don't see how Mr. Mulvaney can be in the Bureau and not be violating that provision every day that he's there. And in his congressional testimony yesterday, Mr. Mulvaney admitted that he performs Bureau business at the OMB offices and vice versa. And so this is a structural, it's a specific provision intended to facilitate the overall structural design of the CFPB's independence. But it makes it very clear. So you would disagree with his proposition that the President could nominate Mr. Mulvaney to have two jobs? He could, yes. He could nominate Mr. Mulvaney to be the CFPB director, but then he would have to choose which job because this statute makes it very clear that the OMB cannot have jurisdiction or oversight. Those are Congress's words over this Bureau. And so this is, that's why I said earlier, this is the one person that Congress made it very clear cannot be in this position in this Bureau. I think my colleague's argument also brought out how extreme the government's position is, that it amounts really to a magic words kind of theory, that Congress cannot displace the FVRA in their words unless Congress explicitly refers to the FVRA and says we are overriding the FVRA. And I think the Supreme Court has been very clear that one Congress cannot bind a future Congress. Justice Scalia mentions this in his treatise and in his opinion in the Lockhart decision. And so that is effectively what they're saying, even with respect to these single director independent agencies that Congress created in the wake of the FVRA, where it's quite clear they used mandatory language and it's quite clear that they intended these agencies to be independent of presidential control. But on their view, these agencies would be less independent than the multi-member commissions that preceded them, like the FTC, where the president cannot name a successor to run those agencies, an agency head, without Senate confirmation. Finally, or two more points, Judge Millett, you asked my colleague about the word unavailable. And I think it's telling that the reason I said earlier that the government wants to have it both ways, they want to be able to read this word unavailable, as we do, to allow it to cover a vacancy, but they want to have the ability to have Mr. Mulvaney, for example, install a deputy director who then becomes the acting director and remains there and is controlled by the president. And so I think, you know, I think the Court should be wary of that, and however it writes its opinion, to ensure that the statutory design isn't turned on its head and that we don't have someone who serves at the pleasure of the president serving indefinitely. And finally, I would just say purpose, I think, has a role here. And what this Court is tasked with doing here is interpreting two statutes. The Federal Vacancies Reform Act, that had a purpose of limiting the president's role and safeguarding the prerogatives of the Senate. And the Dodd-Frank Act, which had an overarching purpose in creating this agency, of structuring an agency that's independent of presidential control. And in a feat of legal alchemy, they have managed to read both statutes together to maximize presidential control and indeed to allow the president to take over this agency in a way that would not be possible for any of the other independent financial regulators. Thank you. We'll take the case under advisement.
judges: Rogers, Griffith, Millett